IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                                          PLAINTIFF

vs.                                  Case No:  6:07-cr-60011

DOMINIC VICTOR MARCANTONIO                                              DEFENDANT

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant's Motion to Suppress physical evidence seized at the time of his arrest on February 23, 2007.  (Doc. No. 43).[1]  On September 26, 2007, the Government filed its responses to Defendant's Motion to Suppress.  (Doc. No. 48).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), United States District Judge Robert T. Dawson referred Defendant's Motion to Suppress to the undersigned on September 10, 2007 for the purposes of making a report and recommendation.  (Doc. 44).  A hearing on this motion was held on October 3, 2007.   The Court, having reviewed the testimony, exhibits presented at the hearing, arguments of counsel, and the relevant briefing, recommends that Defendant's Motion to Suppress be **DENIED.**

**1. Procedural History and Facts**[2]

Defendant was charged in a two-count superseding indictment returned by a federal grand

---

[1] The docket numbers are referenced by the designation "Doc. No."

[2] The relevant facts are taken from the hearing on October 3, 2007 and the briefing of the parties.  FBI Agent Jimmie Caudle, Jr. testified at the hearing on behalf of the Government.   The Defendant testified on his own behalf.

jury on May 9, 2007.  Count One of the superseding indictment charged Defendant with failing to register as a convicted sex offender in violation of Title 18, United States Code, Section 2250 (the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. § 16901, *et seq*.).  Count Two of the superseding indictment charged Defendant with possession of child pornography in violation of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2).  Count Two specifically charged Defendant with knowingly possessing one or more CD-ROM discs containing child pornography.

In early 2007, a special agent of the Federal Bureau of Investigation ("FBI") in Utah, conducting an undercover online operation targeting computer sexual predators, was contacted over the internet by an individual subsequently identified as the Defendant.  During the course of the undercover operation, the agent discovered Defendant's identity and learned Defendant was a convicted sex offender from Michigan currently residing in Hot Springs, Arkansas.  Also during the course of the undercover operation, Defendant revealed to the undercover FBI agent that he was a former police officer who was no longer employed in law enforcement due to a child pornography charge for which he spent four months in jail.  Law enforcement in Arkansas confirmed Defendant had been convicted of possessing child pornography in Michigan in 2002 and confirmed he was a police officer with the Lansing, Michigan, Police Department at the time of his 2002 arrest.  Defendant allegedly moved from Michigan to Arkansas and failed to register as a sex offender.

On February 23, 2007, at approximately 8:30 a.m., Deputy United States Marshal Richard Neal, along with FBI Special Agents ("SA") Charles Falls and Jimmie Caudle, Jr., went to Defendant's residence in Hot Springs, Arkansas to serve an arrest warrant on him for failing to register as a sex offender.   The officers were aware of the undercover investigation of Defendant being conducted by the FBI Office in Utah.  When the officers arrived at Defendant's residence, they

identified themselves and announced their intention to arrest Defendant for violating Title 18, United States Code, Section 2250. The Defendant asked permission to change his clothes before being taken into custody. The officers agreed to allow Defendant to change clothes and accompanied the Defendant to a bedroom he identified as his.[3] The officers observed a desktop computer in the bedroom. The computer was on and appeared to be connected to the internet. The computer had a video camera mounted on top of the monitor. The Defendant asked permission to turn off his computer, which SA Caudle denied. SA Caudle told Defendant the FBI wanted to view the contents of his computer, but would not do so without his consent. Defendant did not consent to the FBI analyzing the computer.

After Defendant changed clothes the officers and Defendant returned to the living room. SA Caudle informed Defendant the officers were aware he had been communicating online with an undercover FBI agent. Further SA Caudle informed Defendant the FBI believed illegal contraband was present on Defendant's computer. The Defendant was given a summary of the investigation regarding his conduct. SA Caudle informed Defendant that the officers had provided him with the information about the investigation because they wanted to interview him and the information would allow Defendant to make an informed decision regarding the requested interview.

Defendant was also told the FBI would be seeking a search warrant which, if authorized, would permit the FBI to return to the residence to seize the computer. Defendant was advised that because he had already denied consent to search his computer, the officers would not request his consent to search again. At that time Defendant declined to answer questions regarding the Utah

---

[3]SA Caudle testified that he and SA Falls accompanied Defendant to the bedroom, while Deputy Neal was "nearby." Defendant testified that all three officers accompanied him to the bedroom.

investigation.

Defendant was then given his *Miranda* warning.  While being read his *Miranda* warning, Defendant was able to recite aloud portions of the Advice of Rights form from memory.[4]  At the request of Defendant, SA Caudle marked through the sentence on the Advice of Rights form which stated "At this time, I am willing to answer questions without a lawyer present" and wrote the following two sentences, as dictated to him by Defendant: "I do not wish to answer any questions at this time.  I will provide you with some computer discs." (Doc No. 48-2). The Defendant then signed the form as amended.  Defendant acknowledged his rights and stated that he did not wish to answer any questions at that time, but wanted to give the agents some computer discs. The Defendant was polite and attentive during this time.  After the Defendant initially denied consent to search the computer, the officers made no further request that Defendant provide access to any other item or property.  SA Caudle indicated Defendant was alert, intelligent and did not appear to be under the influence drugs or alcohol.

The Defendant went back to his bedroom, accompanied by SA Caudle, and retrieved six CD computer discs from his night stand near his bed.  Defendant handed these to SA Caudle.  The Defendant was given a receipt for the six CD computer discs  and was then transported to the U.S. Marshal's Office in Hot Springs.  According to SA Caudle the total time from the agents entry to Defendant's home until their leaving was 15 to 30 minutes.

The Defendant testified at the suppression hearing.  He stated the officers did not verbally or physically threaten him during the time they were in his residence.  The Defendant stated that one

---

[4] As stated above Defendant had indicated to the officers that he had worked as a law enforcement officer for several years.  Defendant also stated he had attended three and half years of college and had a law degree. Defendant was 43 years old at the time of this encounter.

of the officers mentioned "cooperation" to him during the time the investigation was being explained. He stated that because of his prior experience as a law enforcement officer he believed that handing over the computer discs might act to his benefit. Defendant further testified that any threat he felt was because he believed, based on what the officers had told him about the investigation, that a search warrant would be issued based on probable cause evidence of a crime would be found on the computer.

## 2. Discussion

In the present action, Defendant moves to suppress the evidence seized from his home, namely the six CD computer discs and the evidence contained on them. It is the substance of those discs that encompasses Count Two of the Superseding Indictment. Defendant argues the computer discs were taken pursuant to an unlawful consent search.

### A. Voluntary Production

The evidence obtained from Defendant's home, which is the subject of this Motion, was not discovered and seized pursuant to a consent search. In fact, the evidence was not obtained by a search at all. The six CD computer discs were voluntarily given to the special agents, present at Defendant's home, by the Defendant himself. Defendant stated both orally, and in the signed Advice of Rights form (Doc. No. 48-2), that it was his desire to give the six CD computer discs to the special agents. Defendant testified that he was not threatened either verbally or physically, but that he believed a search warrant would be issued and thought that some cooperation with law enforcement would accrue to his benefit. The officers neither demanded nor requested that Defendant provide the CD computer discs. He simply volunteered to give to the officers.

### **B. Valid Consent Search**

Even if the Court assumes the CD computer discs at issue were obtained as a result of a search by law enforcement, such search was conducted pursuant to the consent of the Defendant. A valid search may be made without a warrant and without probable cause if the person in control of the premises has given voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Zamoran-Coronel*, 231 F.3d 466 (8th Cir. 2000). "Unlike the waiver of constitutional rights associated with a fair trial, consent to a police search need only be voluntary, and the party giving consent need not be fully aware of his or her constitutional rights." *See United States v. Lee*, 356 F.3d 831, 833-34 (8th Cir. 2003). The issue of whether consent was voluntary is a question of fact which requires an intensive inquiry, and courts must conduct an inquiry to look at a number of different considerations, none of which standing alone is dispositive. *Id*. The government has the burden of showing that consent was voluntary. *Id*.

Consent is voluntary "if it was 'the product of an essentially free and unconstrained choice by its maker,' rather than 'the product of duress or coercion, express or implied.'" *See United States v. Chaidez*, 906 F.2d 377, 380-81 (8th Cir.1990) (quoting *Bustamonte*, 93 S.Ct. at 2047). This determination depends upon the totality of the circumstances in a particular case, including both the characteristics of the accused and the details of the interrogation. *Id.* Characteristics of a defendant relevant to the voluntariness of his consent include (1) his age, (2) his general intelligence and education, (3) whether he was intoxicated or under the influence of drugs when he consented, (4) whether he consented after being informed of his right to withhold consent or of his Miranda rights, and (5) whether, because he had been previously arrested, he was aware of the protections afforded to suspected criminals by the legal system. *United States v. Urbina*, 431 F.3d 305, 309 (8th Cir.

2005). Additional factors used in examining the environment in which consent was given include whether the defendant (1) was detained and questioned for a long or short time, (2) was threatened, physically intimidated, or punished by police, (3) relied upon promises or misrepresentations made by the police, (4) was in custody or under arrest when the consent was given, (5) was in a public or secluded place, or (6) either objected to the search or stood by silently while the search occurred. *Id.*

In this particular matter, Defendant was 43 years old at the time of his encounter with law enforcement. According to Defendant's testimony, he attended the University of Michigan for three and one-half years, and graduated from the Thomas M. Cooley School of Law in Lansing, Michigan. Following graduation from law school, Defendant was employed for several years with City of Lansing, Michigan Police Department. According to SA Caudle, Defendant did not appear to be intoxicated or under the influence of drugs, nor did Defendant provide any evidence indicating this. While being read his Miranda warning, Defendant was able to recite aloud portions of the Advice of Rights form from memory. As mentioned, Defendant acknowledged his rights and said that he did not wish to answer any questions at that time, but wanted to give the agents the computer discs in question. Finally, Defendant had a previous arrest and criminal conviction, and was a former police officer. All of the foregoing facts show he was aware of the protections afforded to suspected criminals by the legal system.

As for the environment in which the events of this morning occurred, Defendant was not detained for a lengthy time. The total time from the agents entry to Defendant's home until their leaving was 15 to 30 minutes. Further, only approximately ten minutes elapsed from the time of arrest until the time that the agents obtained the computer discs from Defendant. There was no

evidence of any threats made to Defendant, in fact, Defendant testified he never felt threatened either verbally or physically by the officers.  Defendant testified that he felt threatened only by his belief a search warrant would be issued because of the facts the officers related to him regarding the status of the investigation.  He was concerned because as a former police officer he believed it likely a warrant could be obtained based on the information already in the officers possession.  The likely existence of probable cause for issuance of a search warrant does not constitute undue coercion or threats so as to vitiate consent.  Defendant was not subject to any promises or misrepresentations which he might have relied upon in the providing the computer discs.  Finally, although Defendant was in custody at the time the computer discs were received, the six CD computer discs were voluntarily given to the officers present at Defendant's home by the Defendant himself.

The totality of the circumstances does not warrant the suppression of six CD computer discs provided to the special agents by Defendant.   If the CD computer discs were obtained by a search, such search was certainly conducted pursuant to a voluntary consent given by the Defendant.

**3.  Conclusion**

Based upon the foregoing, this Court recommends that Defendant's Motion to Suppress (Doc. No. 43) be **DENIED**.

**Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.** *See* **28 U.S.C. § 636(b)(1)(C).  Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days after service will bar an aggrieved party from** *de novo* **review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the**

**court except on grounds of plain error or manifest injustice.**

   **ENTERED** this **12th day of October, 2007.**

                                          /s/   Barry A. Bryant
                                          Honorable Barry A. Bryant
                                          United States Magistrate Judge